IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

PHILIP M. KLEINSMITH,

        Plaintiff,

vs.

MARK L. SHURTLEFF, Attorney
General for the State of Utah,

        Defendant.

Civil No.  2:06-CV-00387 BSJ

**MEMORANDUM OPINION
& ORDER**

**FILED**
CLERK, U.S. DISTRICT COURT
February 16, 2007 (4:55pm)
* * * * * * * * *  DISTRICT OF UTAH

Plaintiff Philip M. Kleinsmith ("Kleinsmith") filed this lawsuit against defendant Mark L.

Shurtleff ("Shurtleff"), the Attorney General for the State of Utah, on May 11, 2006, raising

constitutional challenges to Utah Code Ann. § 57-1-21(1)(a)(i)(A)-(D) (Supp. 2006), the statute

that governs the qualifications of trustees of trust deeds in the State of Utah.  This matter is

currently before the court on the parties' cross-motions for summary judgment, which were

argued before the court on September 26, 2006.  At the September 26, 2006 hearing, Kleinsmith,

an attorney licensed to practice law in Utah, represented himself.  Jerrold S. Jensen, Assistant

Attorney General for the State of Utah, and Michael W. Brown, law student, represented

Shurtleff.  After hearing the parties' respective arguments, the court took the matter under

advisement.

The court has carefully considered the parties' briefs and arguments, as well as the law

and facts relevant to their cross-motions for summary judgment.  Now being fully advised, the

court renders the following Memorandum Opinion and Order, granting Shurtleff's motion for

summary judgment and denying Kleinsmith's motion for summary judgment.

## I.      BACKGROUND

Effective May 3, 2004, the Utah Legislature amended Utah Code Ann. § 57-1-21 (the "Statute"), changing the portion of the Statute relating to attorney-trustees of trust deeds to read as follows:

> (1)(a) The trustee of a trust deed shall be:
>
> > (i) any active member of the Utah State Bar who maintains a place within the state where the trustor or other interested parties may meet with the trustee to:
> >
> > > (A) request information about what is required to reinstate or payoff the obligation secured by the trust deed;
> > > (B) deliver written communications to the lender as required by both the trust deed and by law;
> > > (C) deliver funds to reinstate or payoff the loan secured by the trust deed; or
> > > (D) deliver funds by a bidder at a foreclosure sale to pay for the purchase of the property secured by the trust deed.

Before this amendment, any active member of the Utah State Bar, including an attorney with no physical presence whatsoever in Utah, could serve as a trustee of trust deeds in Utah.[1] According to Shurtleff, however, certain Utah legislators became aware of the difficulty that some Utah homeowners were having effectively communicating with the trustee overseeing the foreclosure of their home over the telephone.[2]  Believing that attorney-trustees participate in a majority of foreclosures in the State and that in-person accessibility to attorney-trustees was important for Utah homeowners, the Utah Legislature changed the Statute to require that

---

[1](Case No. 2:03-cv-63 TC, Order (dkt. no. 14).)

[2](Memorandum in Support of Defendant's Motion for Summary Judgment and in Response to Plaintiff's Motion for Summary Judgment ("Shurtleff's Supporting Memo.") (dkt. no. 8), at 2.)

attorney-trustees must "maintain[] a place within the state where the trustor or other interested parties may meet with the trustee . . . ."[3]  The Utah Legislature determined that requiring attorney-trustees to maintain a place within Utah would alleviate some of the burdens that Utah homeowners face when confronted with a foreclosure by increasing Utah homeowners' face-to-face accessibility to the attorney-trustees overseeing foreclosures, by improving communication between homeowners and attorney-trustees, and by facilitating the exchange of information and the delivery of funds.[4]

In May of 2006, shortly after initiating this action, Kleinsmith filed his motion for summary judgment.[5]  In his Motion, Kleinsmith asks the court to enter an order declaring that Utah Code Ann. § 57-1-21(1)(a)(i)(A)-(D) (hereinafter referred to as "Amendment III"),[6] is unconstitutional under the substantive Due Process, Equal Protection, dormant Commerce, and Privileges and Immunities Clauses of the United States Constitution because it requires him, an out-of-state attorney-trustee, to maintain a place in Utah where the public can meet with him in-person regarding the foreclosure on properties for which he serves as trustee.[7]  This action is Kleinsmith's third constitutional challenge to this section of the Statute.

———————————————

[3]Utah Code Ann. § 57-1-21; (Shurtleff's Supporting Memo. (dkt. no. 8), at 2-3, 19.)

[4](Shurtleff's Supporting Memo. (dkt. no. 8), at 3.)

[5](Plaintiff's Motion for Summary Judgment (dkt. no. 2).)

[6]Because the Utah Legislature's 2004 amendment to Utah Code Ann. § 57-1-21(1)(a)(i) was their third amendment to the portion of the statute dealing with attorney-trustees since 2001, the parties refer to the portions of the statute that Kleinsmith is challenging in this action, Utah Code Annotated § 57-1-21(1)(a)(i)(A)-(D), as "Amendment III."  And for ease of reference, the court will do so as well.

[7](Plaintiff's Motion for Summary Judgment (dkt. no. 2).)

Kleinsmith's first challenge was brought after the Statute was amended in 2001 and the requirement that an attorney-trustee of a trust deed be "any active member of the Utah State Bar" was changed to require that such a trustee be "any active member of the Utah State Bar residing in Utah."[8]   In that case, the court granted Kleinsmith's summary judgment motion and concluded that "Utah Code Ann. § 57-1-21(1)(a)(i) inhibits a nonresident's ability to practice law in the state of Utah based upon the person's nonresident status, and therefore burdens a privilege guaranteed by the Privileges and Immunities Clause."[9]   The court found that although the State had articulated a "substantial reason" for the amendment, the amendment did not bear a substantial relation to the State's proffered objectives and severed the phrase "residing in Utah" from the Statute.[10]

Kleinsmith's second challenge was brought after the Statute was amended in 2002 to require that an attorney-trustee of a trust deed be an active member of the Utah State Bar who either "resides in Utah" or "maintains a bona fide office in the state."[11]   In that action, the court granted Kleinsmith's summary judgment motion and ruled that the challenged portions of the Statute violated the dormant Commerce Clause because "the 'residence' provision and the 'bona fide office' provision, read together, impose[d] on out-of-state attorney-trustees a burden and expense (that of maintaining a bona fide office in Utah) that in-state attorney-trustees [we]re

---

[8] (Case No. 2:01-cv-00310 TS, Memorandum and Order Granting Plaintiff's Motion for Summary Judgment (dkt. no. 16).)

[9] (*Id.* at  6.)

[10] (*Id.* at 11, 13-15.)

[11] (Case No. 2:03-cv-63 TC, Order (dkt. no. 14).)

spared[,]" and therefore favored in-state economic interests over out-of-state interests.[12]  The
court severed the residence and the bona fide office subsections of the Statute, leaving the
Statute to read that an attorney-trustee of a trust deed shall be "any active member of the Utah
State Bar," as it did before the 2002 amendment.[13]

 In the action before this court, Kleinsmith generally identifies two major problems with
Amendment III that he repeatedly argues leads to the amendment's unconstitutionality under the
Equal Protection, substantive Due Process, dormant Commerce, and Privileges and Immunities
Clauses.  One of the constitutional problems with Amendment III, according to Kleinsmith, is
that its requirement that attorney-trustees be localized in some fashion is inconsistent with the
rest of the Statute, which does not impose the exact same localization requirements on the other
types of trustees of trust deeds.[14]

 Kleinsmith argues that the other main constitutional problem with Amendment III is that
its requirement that attorney-trustees maintain a place in Utah does not achieve the legislature's
purported goal of increasing trustee accessibility because technology makes out-of-state
attorney-trustees as accessible to Utah homeowners as attorney-trustees with a place in Utah.[15]

 Shurtleff responded to Kleinsmith's motion by filing a cross-motion for summary

---

[12](*Id.* at 1-2 (citing *Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1106 (3d Cir. 1997)).)

[13](*Id.* at 2.)

[14](*See* Kleinsmith's Memorandum in Support of Motion for Summary Judgment ("Kleinsmith's Supporting Memo.) (dkt. no. 3) at 13, 16-17, 19, 22; Kleinsmith's (1) Reply to Attorney General's Response, and (2) Response to Attorney General's Motion ("Kleinsmith's Reply") (dkt. no. 19) at 1-3, 5-11, 13, 17, 20-21, 25-26.)

[15](*See* Kleinsmith's Supporting Memo. (dkt. no. 3), at 11-14, 17-19, 22, 24; Kleinsmith's Reply (dkt. no. 19), at 8-9, 14, 18-19.)

judgment, asking the court to declare Amendment III constitutional.[16]  Shurtleff argues that Amendment III treats in-state and out-of-state attorney-trustees alike and accomplishes the Utah Legislature's important objective of increasing the in-person availability of attorney-trustees of trust deeds to Utah homeowners without violating the United States Constitution.[17]

## II.    ANALYSIS

The court has considered the parties' arguments and has determined that Amendment III is constitutional under the Equal Protection, substantive Due Process, dormant Commerce, and Privileges and Immunities Clauses of the United States Constitution.

### A.    Equal Protection

Kleinsmith argues that Amendment III violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."[18] As a general matter, social and economic legislation that neither creates a suspect class nor infringes fundamental constitutional rights is subject to "rational basis" review, under which a law need only be rationally related to a legitimate state interest.[19]

Amendment III's requirement that attorney-trustees "maintain[] a place within the state" applies to all attorneys who want to act as trustees of trust deeds and does not create a suspect classification based on race, religion, or alienage.  In addition, Amendment III, which relates to

---

[16](Shurtleff's Motion for Summary Judgment (dkt. no. 7).)

[17](*See* Shurtleff's Supporting Memo. (dkt. no. 8).)

[18]U.S. Const. amend XIV.

[19]*The Oklahoma Education Ass'n v. The Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989).

6

active members of the Utah State Bar specifically in their capacity as trustees of trust deeds, does not infringe upon fundamental constitutional rights.[20]  Thus, in analyzing Kleinsmith's equal protection challenge to the amendment, the court must apply a rational basis review.  Under this type of review,

> when legislative judgment is called into question on equal protection grounds and the issue is debatable, the decision of the legislature must be upheld if "any state of facts either known or which could reasonably be assumed affords support for it."  Second-guessing by a court is not allowed.[21]

First, the court must consider whether the Utah Legislature had a legitimate interest that it intended Amendment III to address.  Kleinsmith seems to acknowledge that the purported purpose of Amendment III – to secure localized attorney-trustees of trust deeds for property located in Utah and increase Utah homeowner's accessibility to such trustees – is, "[o]n its face . . . a rational purpose."[22]  He argues, however, that the legislature's real purpose in enacting Amendment III could not have been to localize trustees because while the amendment requires attorney-trustees to be localized, the other portions of the Statute do not require the other potentially qualified trustees – title companies, depository institutions, insurance companies, trust companies, agencies of the Federal Government, and entities of the Farm Credit Administration – to be localized in the same way.  According to Kleinsmith, the Statute imposes stricter localization requirements and heavier burdens on attorney-trustees than it does on any of

---

[20](*See id.* (noting that "[t]he Supreme Court characterizes the ability to pursue a particular line of employment as a fundamental right only in the limited context of the privileges and immunities clause . . . .").)

[21]*Powers v. Harris*, 379 F.3d 1208, 1216-17 (10th Cir. 2004) (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 154 (1938)).

[22](Kleinsmith's Supporting Memo. (dkt. no. 3), at 9.)

the other types of trustees, which reflect the Utah Legislature's animosity toward out-of-state attorneys and show that the real intent behind the amendment was to protect in-state attorney-trustees from competition from out-of-state attorney-trustees.

The court recognizes that the Statute prescribes different localization requirements for the different types of trustees.  However, the court does not agree with Kleinsmith's claim that "Amendment III imposes 'Maximum Office Requirements'" on attorney-trustees and that therefore the Statute most heavily burdens attorneys.[23]  While the Statute requires title-company-trustees to "maintain a bona fide office within the state," which is defined as a physical office in Utah that is open to the public and is "staffed during regular business hours on regular business days," the Statute does not impose the same "bona fide office" requirement on attorney-trustees.[24]  Instead, the Utah Legislature chose to require attorney-trustees to maintain "a place." While Amendment III defines a "place" as being somewhere where the public can meet in-person with the attorney trustee to request information, deliver written communications, or deliver funds, neither the amendment nor any other portion of the Statute defines the term "place" as requiring that it be open or staffed during all regular business hours.[25]  Thus, the court finds that contrary to Kleinsmith's arguments, the Statute does not place the heaviest burden on attorney-trustees.

The court also does not agree that the different requirements for the different types of trustees somehow negate the legitimacy of the legislature's interest in localizing, to some degree,

---

[23](*See* Kleinsmith's Supporting Memo. (dkt. no. 3), at 2.)

[24]Utah Code Ann. § 57-1-21.

[25](*Id.*)

attorney-trustees of trust deeds for the benefit of Utah homeowners, especially in light of Kleinsmith's own assertion that "most Utah foreclosures are done pursuant to [the] trustee foreclosure statutes . . . by either *attorney*s or title companies."[26]  The Utah Legislature could have reasonably determined that attorney-trustees deserved particular attention in light of their level of participation in foreclosures in Utah, and just because Amendment III results in some inequality regarding the requirements for the different types of trustees does not mean that the legislature did not have a reasonable basis for the amendment.[27]

In the court's opinion, the Utah Legislature had a legitimate interest in increasing attorney-trustees' in-person availability to Utah homeowners facing foreclosure.  Although Kleinsmith believes that "[n]othing more can be gained by personal contact than by phone contact" and that homeowner-trustee contact via "modern communication methods" is equivalent to in-person contact, the Utah Legislature clearly believed differently.  Given the particular characteristics of foreclosure proceedings, the court determines that it was legitimate for the Utah Legislature to perceive that the burden caused to some Utah homeowners who were unable to have in-person contact with the trustee overseeing the foreclosure of their property was a problem that needed to be remedied in some fashion.

Next, the court must consider whether Amendment III is rationally related to this

---

[26](Kleinsmith's Supporting Memo. (dkt. no. 3), at 2 (emphasis added).)

[27]*See Dandridge v. Williams*, 397 U.S. 471, 485 (1970) ("In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.  If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911))).

legitimate State interest.  Kleinsmith argues that Amendment III's requirement that attorney-trustees maintain a place, or, as Kleinsmith refers to it, an "office," in Utah, is arbitrary, not rationally related to the legislature's interest, and does not achieve the legislature's purported goal of increasing attorney-trustee accessability to Utah homeowners.[28]  According to Kleinsmith, technology and modern communication systems, including long-distance and toll-free telephone numbers, teleconferencing, facsimiles, email, and wire-transfer capabilities, make attorney-trustees who do not maintain a place in Utah equally, if not more, accessible to Utah homeowners.

Kleinsmith also points out that Amendment III does not guarantee that all Utah homeowners will have easier in-person access to the attorney-trustee overseeing their foreclosure because in some cases, an attorney-trustee who is out-of-state may be geographically closer to a homeowner than an attorney-trustee with a place in Utah.  According to Kleinsmith, the "availability and proximity of any trustee is not dictated by geography" but instead "is dictated by technology."  Kleinsmith also argues that although Amendment III requires an in-state location of attorney-trustees, several of the other types of trustees of trust deeds are not required to maintain any sort of location in Utah, and thus, despite the legislature's goal of increased in-person accessibility, Utah homeowners will not be able to personally access those trustees.

The court is not persuaded by Kleinsmith's arguments.  In the court's opinion, Amendment III was a rational way for the Utah Legislature to address the problem it perceived

---

[28]While Kleinsmith may have used the term "office" as a synonym for the word "place," in the court's opinion, as discussed above, the terms "place," as required of attorney-trustees, and "bona fide office," as required of title-company-trustees, do not necessarily have identical meanings under the Statute.

in terms of attorney-trustee accessibility.  The mere fact that Kleinsmith and other out-of-state attorneys wishing to serve as trustees of trust deeds may be somewhat inconvenienced by the requirements of Amendment III is not enough to deem the amendment invalid under the rational basis test.[29]  Because Amendment III and its requirements have a rational relationship to the intended benefit of increasing homeowners' in-person accessibility to attorney-trustees during foreclosure proceedings, the court determines that the amendment does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[30]

### B.       Substantive Due Process

Kleinsmith also challenges Amendment III under the substantive Due Process Clause of the Fourteenth Amendment.  The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law."[31]  The Tenth Circuit has provided that the "review of legislation for substantive due process violations is well defined" and that:

> [w]hen local economic or social regulation is challenged as violating substantive due process, courts consistently defer to legislative

---

[29]*See Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1114-15 (3d Cir. 1997).

[30]Under a rational basis review, the court need only determine that the Utah Legislature rationally believed that its action would further its goal.  And because a "rational-basis review does not give courts the option to speculate as to whether some other scheme could have better regulated the evils in question," *Powers*, 379 F.3d at 1217, the court need not consider whether the legislature's action was the least restrictive means of achieving its purpose.  Thus, in considering Kleinsmith's Equal Protection challenge, the court has not considered Kleinsmith's argument that the Utah Legislature could have improved attorney-trustee accessability by alternative means, less burdensome to him and other out-of-state attorneys, such as requiring attorney-trustees to provide toll-free telephone numbers, toll-free teleconferencing, free money-wiring, and free postage.

[31]U.S. Const. amend. XIV.

11

> determinations as to the desirability of particular statutory schemes.
> Unless a state law trammels fundamental personal rights, we are to presume
> that state legislatures have acted within their constitutional power and are to
> require only that the law "bears a reasonable relation to the state's legitimate
> purpose . . . ."[32]

Because Amendment III does not impact fundamental personal rights, the court must determine whether the amendment bears a reasonable relationship to a legitimate State interest. This is the same rational basis test that the court applied to Kleinsmith's equal protection challenge. And, as discussed above, the court has determined that Amendment III is rationally related to the Utah Legislature's legitimate interest in increasing Utah homeowners' in-person accessibility to attorney-trustees of trust deeds. The amendment, therefore, does not violate the substantive Due Process Clause of the Fourteenth Amendment.

### C.    Dormant Commerce Clause

Kleinsmith's next claim relates to the effect that Amendment III has on interstate commerce. The United States Constitution provides that "Congress shall have Power . . . to regulate Commerce . . . among the several States."[33] Although the Commerce Clause directly speaks only to the power of Congress to regulate interstate commerce, it has long been accepted that the Commerce Clause not only grants Congress the authority to regulate commerce among the States, but also impliedly limits the power of the States to interfere with or impose burdens on interstate commerce.[34] Under the dormant Commerce Clause, states are prevented from

---

[32]*Oklahoma Education Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 935 (10th Cir. 1989) (quoting *Murphy v. Matheson*, 742 F.2d 564, 575 (10th Cir. 1984)).

[33]U.S. Const. art. I, § 8.

[34]*New Energy Co. of India v. Limbach*, 486 U.S. 269, 273 (1988); *American Target Advertising, Inc. v. Giani*, 199 F.3d 1241, 1254 (10th Cir. 2000).

enacting legislation designed to favor in-state economic activity while burdening out-of-state economic activity.[35]

The United States Supreme Court has adopted the following two-tiered approach to analyzing state economic regulation under the Commerce Clause:

> When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry.  *See, e.g., Philadelphia v. New Jersey*, 437 U.S. 617 (1978); *Shafer v. Farmers Grain Co.*, 268 U.S. 189 (1925); *Edgar v. MITE Corp.*, 457 U.S. 624, 640-643 (1982) (plurality opinion).  When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.  *Pike v. Bruce Chruch, Inc.*, 397 U.S. 137, 142 (1970).[36]

In other words, to evaluate Kleinsmith's dormant Commerce Clause challenge, "this court must first determine whether the act in question 'regulates evenhandedly' among economic interests or instead 'discriminates against interstate commerce' either on its face or in practical effect."[37]

Amendment III, the portion of the statute that deals with attorney-trustees and that Kleinsmith has challenged, requires each and every attorney who wants to qualify as a trustee of a trust deed – whether such attorney resides in, or outside of, Utah – to maintain a place in the State where the homeowner or other interested parties may meet in-person with the trustee.[38]

---

[35]*New Energy Co. of India*, 486 U.S. at 273.

[36]*Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 578-79 (1986).

[37]*American Target Advertising, Inc.*, 199 F.3d at 1254).

[38]Utah Code Ann. § 57-1-21(1)(a)(i)(A)-(D).

Kleinsmith seems to acknowledge that Amendment III requires all attorney-trustees, regardless of where they reside, to maintain a place in Utah.  He vigorously argues, however, that the amendment is not evenhanded and discriminates against interstate commerce because not every type of trustee under the Statute is subject to the same requirement of maintaining a place in Utah.  The court recognizes that the Statute as a whole does not require the exact same thing of each type of trustee, but agrees with Shurtleff that this argument of Kleinsmith fails to invoke the dormant Commerce Clause because it does not involve an allegation that the amendment favors in-state economic interests over out-of-state interests.

None of Kleinsmith's arguments have persuaded the court that Amendment III directly discriminates against interstate commerce or directly favors in-state economic interests over out-of-state economic interests.[39]  Amendment III does not prevent out-of-state attorneys from serving as trustees of trust deeds.  Instead, the amendment clearly requires the exact same thing of in-state attorney-trustees as it does of out-of-state attorney-trustees: that the attorney be an "active member of the Utah State Bar who maintains a place within the state where the trustor or other interested parties may meet with the trustee . . . ."[40]  Because Amendment III regulates evenhandedly and its effects on interstate commerce are only incidental, the court determines

_____

[39]For instance, Kleinsmith argues that Amendment III burdens interstate commerce because it effectively excludes attorneys who have small trustee practices or who "do not wish to invest or cannot afford to invest in a Utah office."  (Kleinsmith's Supporting Memo. (dkt. no. 3) at 18-19.)  Kleinsmith's arguments, however, ignore the fact that Amendment III requires the same thing of in-state attorneys as it does of out-of-state attorneys.  And thus, to the extent that Amendment III burdens attorneys who have small trustee practices or who do not want to incur the cost of maintaining a place in Utah that is open to the public, such attorneys are just as likely to be in-state attorneys as they are to be out-of-state attorneys.

[40]Utah Code Ann. § 57-1-21(1)(a)(i).

that the *Pike* balancing test is the appropriate standard to apply in evaluating Kleinsmith's dormant Commerce Clause challenge of the amendment.  Applying that standard, the court must balance various interests and determine whether "the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits" of the amendment.[41]

 As discussed in detail above, the court has already determined that Amendment III was enacted in relation to the State's legitimate interest in decreasing the burden on some Utah homeowners during foreclosure proceedings by increasing their in-person accessability to attorney-trustees.  Thus, the court must next determine whether the incidental burdens that Amendment III imposes on interstate commerce clearly exceed the amendment's local benefits. Kleinsmith, the party challenging Amendment III, "'bears the burden of showing that the incidental burden on interstate commerce is excessive compared to the local interest.'"[42] Kleinsmith, who focused mainly on how Amendment III's requirements impose greater burdens on attorney-trustees than the requirements imposed on other types of trustees, has failed to meet his burden.

While Amendment III burdens all attorney-trustees – whether in-state or out-of-state – the court acknowledges that some of these burdens will weigh more heavily on out-of-state attorney-trustees and will burden interstate commerce to some extent.  For instance, while all attorney-trustees will incur some cost in maintaining a place where the public can meet with them, out-of-state attorneys, unlike in-state attorneys, will incur some travel costs as a result of

---

[41]*Brown-Forman Distillers Corp.*, 476 U.S. at 578-79.

[42]*Blue Circle Cement, Inc. v. Board of County Comm'rs*, 27 F.3d 1499, 1511 (10th Cir. 1994) (quoting *Dorrance v. McCarthy*, 957 F.2d 761, 763 (10th Cir. 1992)).

the amendment.  Similarly, while under the court's reading of the amendment, in-state attorneys could possibly work from their homes (if willing to open their homes to the public), out-of-state attorneys would not have that option.  Despite these and the other incidental burdens on out-of-state attorneys, however, the court determines that Amendment III's burdens on interstate commerce are minimal.  Amendment III does not prohibit attorney-trustees from sharing office space or other resources, such as support staff, with other parties.  Moreover, Amendment III and the Statute as a whole do not require that the place maintained by attorney-trustees be open to the public during all regular business hours on all regular business days, as required of title-company-trustees, and do not unreasonably restrict out-of-state attorney-trustees from also maintaining a practice or working in other states.

In addition, given the legislature's legitimate effort to increase attorney-trustees' in-person accessibility, the court finds that the State's interest could not be equally promoted by other, less burdensome means, such as by requiring the trustees to provide homeowners use of toll-fee telephone numbers and free wire-transferring services, as suggested by Kleinsmith.[43]  Moreover, the court finds that Kleinsmith's suggestion that the legislature could have achieved its purpose by mandating that only County Sheriffs could conduct non-judicial foreclosures is an alternative that clearly would have been more restrictive and more burdensome on interstate commerce than Amendment III.

The incidental burdens that Amendment III imposes on interstate commerce are not

---

[43]The alternative requirements proposed by Kleinsmith ignore the fact that the Utah Legislature identified a difference between in-person contact and other types of contact and clearly determined that increasing *in-person* contact would provide additional and important benefits to homeowners facing foreclosure.

clearly excessive when compared to the local benefit that Amendment III provides Utah

homeowners facing foreclosure.  The court, therefore, finds that Amendment III does not violate

the dormant Commerce Clause.

### D.    Privileges and Immunities Clause

Kleinsmith's final claim is that Amendment III violates the Privileges and Immunities

Clause.  The Constitution provides that the "Citizens of each State shall be entitled to all

Privileges and Immunities of Citizens in the several States."[44]  This clause was intended to "help

fuse into one Nation a collection of independent, sovereign States" and was "designed to insure

to a citizen of State A who ventures into State B the same privileges which the citizens of State

B enjoy."[45]

While the Privileges and Immunities Clause bars discrimination against citizens of other

states where there is no substantial reason for the discrimination beyond the mere fact that they

are citizens of other states, it does not preclude disparity of treatment where there are valid,

independent reasons for such treatment.[46]  Under the Privileges and Immunities Clause, a "State

may not discriminate against nonresidents unless it shows that such discrimination bears a close

relation to the achievement of substantial state objectives."[47]  The United States Supreme Court

has indicated that:

> In deciding whether the degree of discrimination bears a sufficiently
> close relation to the reasons proffered by the State, the Court has

---

[44]Article IV, Section 2.

[45]*Toomer v. Witsell.*, 334 U.S. 385, 395 (1948).

[46]*Id.* at 396.

[47]*Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 70 (1988).

17

> considered whether, within the full panoply of legislative choices
> otherwise available to the State, there exist alternative means of
> furthering the State's purpose without implicating constitutional
> concerns.[48]

Furthermore, the court's inquiry should "be conducted with due regard for the principle that the

States should have considerable leeway in analyzing local evils and in prescribing appropriate

cures."[49]

Thus, in analyzing Kleinsmith's Privileges and Immunities challenge to Amendment III,

the court must determine whether the amendment's requirements discriminate against

nonresidents.  If they do, the court must then consider whether such discrimination against

nonresidents bears a substantial relationship to the legislature's interest and whether less

restrictive means are available.

Unlike the Utah Legislature's two prior amendments to the portion of the Statute dealing

with attorney-trustees, Amendment III does not distinguish between residents and non-residents

and imposes identical requirements on attorneys residing in Utah as it does on attorneys residing

outside of Utah.  Under Amendment III, in order to qualify as an attorney-trustee of a trust deed,

residents and nonresidents alike must: (1) be active members of the Utah State Bar; and (2)

maintain a place within the State where the public may meet with the trustee to request

information about what is required to reinstate or payoff the obligation secured by the trust deed,

deliver written communications to the lender, deliver funds to reinstate or payoff the loan

secured by the trust deed, or deliver funds by a bidder at a foreclosure sale to pay for the

---

[48]*Id.* at 67.

[49]*Toomer*, 334 U.S. at 396.

purchase of the property secured by the trust deed.[50]

As discussed above in the court's evaluation of Kleinsmith's dormant Commerce Clause challenge, the court finds that Amendment III does not prohibit non-residents from serving as trustees of trust deeds and does not significantly discriminate against non-residents.  Any incidental burden that Amendment III imposes on nonresidents is incidental and minimal, and it was the legislature's prerogative to determine that such burden was better felt by the attorney-trustees than by the homeowners facing foreclosures.

Furthermore, also as discussed above, the court determines that Amendment III's requirements bear a close relationship to the Utah Legislature's legitimate objective of alleviating some of the burden felt by Utah homeowners facing foreclosure by increasing attorney-trustees' in-person availability.  And given the legislature's reasonable determination that in-person accessibility provides a benefit to homeowners that other types of access do not provide, the court is not persuaded that there were alternative means of furthering the legislature's goal that would be less burdensome to nonresidents.  For these reasons, the court determines that Amendment III does not violate the Privileges and Immunities Clause.

## III.   CONCLUSION

Based upon the above analysis and reasoning, the court determines that Amendment III

---

[50](Utah Code Ann. § 57-1-21(1)(a)(i)(A)-(D).)

does not violate the Equal Protection, substantive Due Process, dormant Commerce, or Privileges and Immunities Clauses of the United States Constitution.

Accordingly,

**IT IS HEREBY ORDERED** that Kleinsmith's Motion for Summary Judgment (dkt. no. 2) is DENIED, Shurtleff's Motion for Summary Judgment (dkt. no. 7) is GRANTED, and the above-captioned proceeding is DISMISSED.

Let Judgment be entered accordingly.

DATED this _16_ day of February, 2007.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge